## STATE v. JARMON.
### No. 8425.

Court of Civil Appeals of Texas. San Antonio.
Feb. 28, 1930.
Rehearing Denied March 15, 1930.

R. L. Bobbitt, Atty. Gen., W. Dewey Law-rence, Asst. Atty. Gen., and R. A. Weinert, of Seguin, for the State.

Gaines, Gaines & Roberts, Arnold & Cozby, and J. B. Lewright, all of San Antonio, for appellee.

SMITH, J.

It is provided in Rule 37, promulgated by the Railroad Commission of Texas, now in force: "No well for oil or gas shall here-after be drilled nearer than three hundred (300) feet to any other completed or drilling well on the same or adjoining tract or farm; and no well shall be drilled nearer than one hundred and fifty (150) feet to any property line; provided, that the Commission, in order to prevent waste or to protect vested rights, will grant exceptions permitting drilling with-in shorter distances than as above prescribed; upon application filed fully stating the facts, notice thereof having first been given to all adjacent lessees affected thereby. Rule 37 shall not for the present be enforced within the proven oil fields of the Gulf Coast."

It is provided in article 6024, R. S. 1925: "In all matters pertaining to the discharge of its duties and the enforcement of its powers and authority as provided by the terms of this title, the Commission shall institute suits, * * * and sue out such writs and process as may be necessary for the enforcement of its orders, and punish for contempt or dis-obedience of its orders as the district court may do."

It is provided in article 6036, R. S. 1925, as amended by the Act of 1929, 41st Leg., p. 694, C. 313, § 4: "In addition to any penalty that may be imposed by the [Railroad] Com-mission for contempt for the violation of its orders, any person, * * * violating any * * * of the rules, regulations or orders of said Commission * * * shall be sub-ject to a penalty of not more than One Thou-sand ($1,000.00) Dollars for each and every

day of such violation, to be recovered in any court of competent jurisdiction in the county in which the violation occurs, * * * said Commission shall also have the power to enforce * * * all rules, regulations and orders promulgated by said Commission * * * by suit for injunction brought in the name of the State of Texas in the county in which the property involved is located."

It is provided in section 6 (article 6036b, Vernon's Ann. Civ. St. 1925) of said act: "If any person * * * at interest be dissatisfied with any rule, regulation or order adopted by the Commission in pursuance of the provisions of this Act such dissatisfied party may file a petition setting forth the particular cause of objections thereto in a Court of competent jurisdiction in Travis County against the Commission as defendant. * * * "

Jake Jarmon, appellee herein, is the owner of an oil and gas lease upon a strip of land approximately 20 feet wide and 1,000 feet long, situated in the Darst Creek oil field in Guadalupe county. Desiring to exploit said land under said lease, appellee made application in due form to the Railroad Commission for a permit to drill an oil and gas well at a designated location on said strip, under the exception to Rule 37, as provided for therein. This application was filed with the Commission on September 17, 1929, but the Commission having failed—capriciously and without reason therefor, according to this record—to grant or reject or otherwise definitely act upon said application, appellee proceeded to locate and begin drilling a well at the designated point, in violation of Rule 37, on January 16, 1930. The Railroad Commission, in the name of the state, then instituted this action in the district court of Guadalupe county to enjoin appellee from proceeding with his drilling operations in disregard of said Rule 37. The action was grounded upon the above-quoted provision of article 6036, as amended by the act of 1929. The trial court granted the temporary injunction as prayed for, upon an ex parte hearing and without notice to appellee. Subsequently appellee filed a motion to dissolve the injunction, which motion was granted upon a hearing. As appellant made no denial of the allegations of the motion to dissolve, which were duly verified by affidavit, the trial court entered the orders of dissolution upon the facts therein set out. The state has appealed.

As the facts set out in the motion to dissolve were properly verified, and have not been challenged by appellant, they must be taken as true in determining this appeal.

Appellee vigorously attacks the validity of Rule 37, upon several grounds. The validity of the rule has been upheld in a restricted way, by both federal and state courts. Railroad Commission of Texas v. Bass (Tex. Civ. App.) 10 S.W.(2d) 589; Oil Co. v. Atlantic Co. (D. C.) 16 F.(2d) 639; Id. (C. C. A.) 22 F.(2d) 597. Those two cases involved the same property. In the Bass Case the Supreme Court has granted writ of error, not because of apparent or probable error in the decision, but because "of the importance of the question," and has not decided the case; in the federal case the Supreme Court of the United States denied writ of certiorari. 277 U. S. 585, 48 S. Ct. 433, 72 L. Ed. 1000. Those cases were decided upon facts peculiar to them, and not applicable here, and therefore the decisions are without particular value in disposing of this case. In those cases the owner of a strip of land 56 feet wide was granted a permit, by the Railroad Commission, to drill two wells on his strip. In the federal case the owner took the position that the Commission had no power to make or enforce any rule of this nature, which contention was overruled. In the state case the rule was upheld, upon the ground, in effect, that by virtue of the exception therein the landowner was given an equal opportunity with abutting owners to exploit his land, by the drilling of two wells upon his narrow strip. In view of those cases, and of familiar rules applicable, we express the opinion, generally, that the promulgation and enforcement of rules such as that contemplated in Rule 37 is but the exercise of the police power delegable by the Legislature to appropriate administrative agencies, such as the Railroad Commission, to reasonably regulate the exploitation of the natural resources of the state so as to prevent the useless waste of those resources, or the destruction of life or property by fire or other hazards peculiar to improvident or careless development of such resources. Under the decision of our Supreme Court in City of Denison v. Gas. Co., 117 Tex. 291, 3 S.W. (2d) 794, this regulatory power, generally, was properly delegated to the Railroad Commission.

Appellee attacks the validity of Rule 37, as modified by the exception thereto that an oil and gas operative may, under permit from the Commission, drill within less than 150 feet of property lines "in order to protect vested rights." Appellee contends that the rule, in connection with the exception, is void because the Commission thereby seeks to arrogate to itself the right of determining what are "vested rights," which is a purely judicial function; that this assumption by a ministerial, and therefore executive, branch of the government is a flagrant encroachment upon the powers and prerogatives of the judicial branch, in contravention of familiar constitutional inhibitions. It is true, perhaps as a matter of course, that the Commission may not exercise the power to adjudicate vested rights, since the legislative branch has no power to delegate to one branch a function inherent in a different branch of government, and of course the Commission may not exer-

cise any powers except those delegated to it by express constitutional or statutory provisions, or by necessary implications therefrom. A reasonable construction of this exception to Rule 37, however, does not appear to bring it under the condemnation of the principle stated. For, by its terms, the Commission does not necessarily assume the prerogative of determining what rights are vested in applicants for permits under said exception. By its terms the applicant is given, simply, the right of protection of his vested rights, *lawfully* ascertained. By this exception alone the rule is saved from attack upon the ground that it gives the Commission the power to destroy vested rights.

■ Appellee devotes much space in his brief to the meaning and application of the word "waste" as used in the exception to Rule 37, in which it is provided that the Commission "will grant exceptions permitting drilling" in cases prohibited generally, by the Rule, "in order to prevent waste." Appellee argues against the rule, or its application in this case, upon the theory that the Commission has withheld the permit from appellee upon the theory that drilling under such permit would produce waste. Apparently appellee misapprehends the purpose of the exception, under the terms of which the permit must be *granted*, not withheld, to prevent waste. It will be assumed, although not expressed therein, that Rule 37 was promulgated by the Commission as a means of conserving the natural resources, oil and gas, under its general power and duty to promulgate rules and regulations necessary to the enforcement of the objects of its creation. And the "waste," as contemplated in the exception, is a waste of those natural resources as defined in article 6014, and not of "drilling money," advanced by the Commission in this case as a reason for delaying action upon appellee's application.

■ The statutes very plainly prescribe the procedure and remedies available to the applicant for the permit and to the Commission in dealing with the applicant. The landowner is required to file his application for a permit, after notice to all parties at interest, and the Commission is required to hear the application, determine its merits, and grant or reject it. It is the duty of the Commission to act upon the application within a reasonable time, and definitely approve or refuse it. If it grants the permit, the matter is settled so far as the Commission is concerned. If it denies the permit, the applicant, if dissatisfied, may appeal to a district court of Travis county to review the Commission's ruling and revise it upon a sufficient showing. If he disregards the adverse ruling and undertakes to drill in spite of it, the Commission is given the cumulative remedies of (1) injunction to restrain him, (2) a suit to enforce the penalty prescribed in article 6036, as amended, of $1,000 a day for each day of such violation, and (3) punishment as for contempt, as provided in said article in connection with article 6024. If he undertakes to drill in violation of Rule 37 without first applying to the Commission for a permit therefor, the Commission has the same remedies as above set out.

■ It is contended by appellant that appellee had and still has a "plain, clear and adequate remedy at law" under and by virtue of the provision, in section 6 of the Act of 1929, that, "If any person * * * at interest be dissatisfied with any rule, regulation or order adopted by the Commission in pursuance of the provisions of this Act such dissatisfied party may file a petition setting forth the particular cause of objections thereto in a Court of competent jurisdiction in Travis County against the Commission as defendant." That provision was not available to appellee in this case, however, for the obvious reason that he evidenced and asserted no dissatisfaction with Rule 37, as modified by the exception thereto, and no other order or ruling had been made in his case. On the other hand, he sought by every means to bring himself within that exception, and insists that he has done so. His dissatisfaction is not with the rule, but with the nonaction thereunder and maladministration thereof by the Commission, which excludes him from the operation and benefits of that remedial act. We do not express any opinion upon the question of the general right of every citizen to the writ of mandamus requiring public officials to perform specific functions imposed upon them by law. If such right was vested in appellee, its enforcement would have involved him in more or less tedious and precarious litigation, unaided by the inapplicable provisions for accelerating the proceeding prescribed in the act of 1929, and tendered by appellant to appellee as his plain and adequate remedy in this case. Had appellee resorted to mandamus under this general right, his travels over that route might have engaged his activities until the value of his land would have shrunk from the maximum of $150,000, as for oil land, to its minimum of $10, its intrinsic value when drained of its oil properties. His fear of this loss was lulled and his hope of legal relief encouraged by the capricious course of the Commission until he was confronted with the immediate and harsh alternative of litigating with the Commission and probably thereby losing his property, or of drilling and thereby saving his property. He chose the latter alternative, and the Commission is not in a position to invoke the aid of a court of equity to stop him, at least so long as it refrains from exercising the long delayed function of passing upon his application. On the other hand, if it has a case therefor, the Commission still has the other remedies, prescribed by law, to punish

appellee as for contempt, as provided in article 6024, and to prosecute him under article 6036, as amended, and recover of him a penalty of as much as $1,000 a day for each day of his violation of Rule 37. In support of this conclusion it is deemed appropriate to set out in detail the conceded facts of the case, which will now be done.

Appellee filed his application with the Railroad Commission, for a permit to drill said well, on September 17, 1929, nearly five months ago. In response to this application, the Commission sent R. D. Parker, chief supervisor of its oil and gas division, to investigate the situation of appellee's lease, hear evidence thereon, and make his recommendation to the Commission as to the merits of the application; these matters being within the scope of his official authority and duty. This hearing was held on September 27, after due notice to adjacent leaseholders, who participated in said hearing. As a result of his hearing, Parker, acting within his official authority, recommended to the Commission, on October 25, that appellee's application be granted and the permit issue to him, subject to his ability to show title. Subsequently Parker recommended that the permit issue to appellee without restriction, except that it be without prejudice to the rights of other claimants to the strip; there being no such claimants so far as this record discloses.

No action having been taken in the matter, the Commission, on November 29 or 30, held a further hearing upon appellee's application, which was again urged by appellee. At the close of this hearing appellee was advised by the Commission that issuance of the permit to him was being withheld pending the establishment of appellee's title to the leasehold estate.

Appellee continued to press his application upon the Commission, which proceeded to have another hearing thereon on January 2 or 3, 1930. No action was taken by the Commission at that hearing, however. At this meeting the question of "compromise and settlement" arose between appellee and the Humble and Texas Companies, propositions and counter propositions were made and rejected, but no agreement resulted. In the meantime, and subsequently, appellant continued to urge the Commission to act upon his application, but without avail. More than three months had passed since the application was filed, more than two months since the chief supervisor of the oil and gas division of the Commission, acting within his peculiar duty, had in effect found appellee entitled to the permit. Appellee's land was being drained by nearby wells, other similar wells were being brought in, other permits upon similar strips were being issued by the Commission, while appellee's hands were being held by the Commission's refusal to issue a permit to him, or to reject his application, which would have relegated him to other remedies.

Appellee continued to press his application before the Commission. Again, on January 8, nearly four months after the filing of his application, he urgently presented the matter to the full Commission, but no action was vouchsafed by its members, who, abandoning the matter of title as a reason for nonaction, gave instead the reasons that if the permit be granted appellee the Commission would be compelled to grant the Humble and Texas Companies, owners of abutting leases, permits to drill offset wells, resulting in the drilling of three wells "within a very few feet of each other," which "would be a waste of drilling money," and that the commissioners "considered it their duty under the laws of Texas to conserve and prevent the waste of oil and gas in that immediate vicinity." At this conference, however, the commissioners urged appellee to "compromise and settle with the Texas and Humble Companies," and offered to act as intermediaries in submitting to said companies any written offer of such compromise and settlement; proposing that if appellee would submit a "reasonable offer to sell" his lease to said companies, and if the commissioners should consider the offer to be reasonable, they would submit it to said companies; that if said companies should then reject the offer so transmitted to them by the commissioners, the latter "would grant appellee the desired permit to drill on his said land and leasehold estate." Appellee alleged that: "Although this defendant (appellee) did not then and there believe that said Railroad Commission of Texas had any right, power or authority to exercise any judicial function, or to discharge any judicial duty, and although this defendant was then and there advised by his attorneys that said Railroad Commission had, and has, no authority, right or power in law to grant or withhold a permit to drill an oil and gas well because they may think this defendant's offer to sell was reasonable or unreasonable, but were and are wholly exceeding their lawful powers and authority in the premises, still this defendant, in an effort to comply with every possible requirement, reasonable or unreasonable, of said Railroad Commission of Texas, in writing submitted to said Railroad Commission, for transmission to said Humble Oil & Refining Company and said Texas Company, an offer of compromise, and of sale, which was in all things just, reasonable and fair to all interested parties."

At said conference appellee "suggested to said three Commissioners" his "entire willingness to do and perform any and all manner of equity as to said Humble and Texas Companies, in such manner as to said Commissioners might appear reasonable and sufficient for such protection of said corporations," offering to impound and place in trust all pro-

...eeds from the sale of the product of the well for which the permit was sought, pending any adjudication of title, or give proper bond for such purpose or for the protection of the Humble and Texas Companies, or to convey the lease to a receiver to whom the permit would issue and who would be required to hold the proceeds of production pending adjudication of all rights of all parties for every purpose. It was alleged that:

"To every one and all of these offers and suggestions on the part of defendant and his attorneys said three Commissioners replied, in substance, that they would not grant such desired permit even to a duly appointed receiver, with authority of court to drill said prospective well, and thereupon all three of said Commissioners agreed and stated to this defendant and his said attorneys that said Commissioners were then and there satisfied with the sufficiency of this defendant's title and right in and to said oil and gas rights, privileges and leasehold estate in, on and under said strip of land involved herein, and said Commissioners further stated that their continued refusal to grant said application for permit to drill on said strip of land was not based upon any question of title or alleged insufficiency of this defendant's title to said oil and gas rights, privileges; etc., but said continued refusal to grant application for permit to drill was due to the unwillingness of said three Commissioners to grant said permit to this defendant and then and thereafter be compelled to grant to said Humble Oil & Refining Company and said Texas Company, respectively, similar permits to drill on their respective leases immediately at or adjacent to the location of said well for which this defendant sought a permit to drill. Said Commissioners then and there, in substance, expressed it as their opinion that it would not be fair and just, in equity, considering the small size of the tract of land involved herein, for them to grant this defendant the desired permit to drill, unless and until both said Humble Oil & Refining Company and said Texas Company should finally refuse a reasonable and fair offer of settlement and compromise made to them by this defendant.

"Immediately following the conclusion of said last mentioned conference this defendant submitted the written proposition of compromise and settlement which is more fully set out in said Exhibit A above mentioned, which is here made for all purposes a part of this motion. At the conclusion of said conference this defendant was informed by said Railroad Commissioners that said Commissioners would immediately submit to Humble Oil & Refining Company and Texas Company said written proposition of this defendant, and said Commissioners then and there informed and promised this defendant that they would communicate with this defendant, at his home in San Antonio, Texas, on the following day, whether or not said proposition of compromise was accepted by said two corporations; moreover, said Commissioners then and there informed this defendant and his attorneys that if said offer of compromise should be rejected by said two corporations, then said Commissioners would take official action, one way or the other, on said still pending application of this defendant for permit to drill.

"Neither on the day next following said last mentioned conference, nor subsequent thereto, did said Railroad Commission of Texas in any manner communicate with this defendant with respect to acceptance vel non by said two corporations of his said written offer of compromise and settlement, nor did said Commissioners, on said next following day or thereafter, inform this defendant, officially or otherwise, whether or not his said application for permit to drill was, or would be, either granted or refused.

"This defendant then delayed matters until 16th day of January, A. D. 1930, and not having as yet heard anything whatsoever from said Railroad Commissioners or any of them this defendant proceeded to drill on his said strip of land involved herein, and was actually drilling thereon, as rapidly as possible, up to the time temporary writ of injunction herein was served upon him on January 21st, A. D. 1930."

Appellee alleged the obvious facts that he is, and has been all along, helpless in the situation. His accruing injuries are irreparable. He has no recourse, for those injuries, against the state, or the Railroad Commission, certainly. He has no recourse against those who are steadily and certainly draining the oil from beneath his land, since the product is the property of those who ensnare and reduce it to possession, as the hunter who captures wild game in open forest or field. His only practical recourse is to utilize his own premises for exploration, discovery, and capture of the elusive product—a right vested in him by reason of his lease.

The nature of appellee's application, its urgency in view of his situation, with which the Railroad Commission was necessarily familiar, was such as to invoke reasonably prompt action thereon by the Commission. Its chief supervisor, thereunto lawfully authorized under articles 6030, as amended (Gen. & Sp. Laws 1929, c. 313, § 3), and 6031, promptly ascertained all the facts necessary to a ruling upon the application, reported his findings to the Commission, recommended the granting of the permit, upon its merits, subject to good title. Then began a long period of dilly-dallying by the Commission. It raised again the futile question of title,

abandoned it, returned to it, and again abandoned it. It raised the questions of possible embarrassment over the assumed necessity of granting two additional permits to lessees of abutting property to offset the well appellee proposed to drill, thereby creating a congestion of operations; of the "waste of drilling money" to be incurred by reason of such congestion (which is not the character of waste contemplated in the law, article 6014); of their "duty under the laws of Texas to conserve and prevent the waste of oil and gas in that immediate vicinity"; and, finally, it waived all these questions, and thereby conceded appellee had a meritorious application, by offering to grant the permit upon condition that appellee would submit, through the Commission, a "reasonable" offer to sell his holdings to the Humble and Texas Companies, and that offer should be rejected by said Companies. Appellee proposed what he considered a reasonable offer to sell out, intrusted such offer to the members of the Commission, who agreed to submit it to the Texas and Humble Companies, and promised to communicate with appellee at a specified address on the following day and then and there advise him whether or not his offer was acceptable to his competitors. The commissioners further advised appellee that if said offer was rejected they "would take official action, one way or the other, on" his application. This was on January 8. The Commission, however, did not communicate with appellee, did not act on his application, have not yet done so. Appellee waited until January 16, one day less than four months after filing his application, nearly three months after the chief supervisor had recommended the granting of the permit, and, despairing of getting any action thereon in time to save the oil underlying his lease, proceeded to the drilling of the well. He continued the operation until he was enjoined therefrom at the instance of the Commission, without notice or an opportunity to be heard.

The Commission does not assert that appellee is not entitled to the permit applied for, does not claim that it is undecided as to the merits of appellee's application, offers no excuse or reason for its nonaction thereon, denies none of the allegations upon which the injunction was dissolved by the court below. It simply seeks to reinstate the injunction and restrain appellee from continuing his drilling operations, resumed when the injunction was dissolved, upon the bald ground that it has not performed its duty of passing upon appellee's application.

 We conclude that under the case made the Commission has failed to do equity, that its conduct towards appellee has been arbitrary and unreasonable, and that, although appellee is technically at fault in proceeding without regard to Rule 37, the Commission is in no position to demand relief through a court of equity, and thereby punish appellee for the consequences of its own dereliction. We see no reason why the age-old maxim, that he who seeks equity must do equity, should not apply to the state and its instrumentalities, as well as to its humblest citizen.

The judgment is affirmed.