●ARKANSAS FUEL OIL CO. et al. v.
REPRIMO OIL CO.

No. 4536.

Court of Civil Appeals of Texas. Amarillo.
Jan. 27, 1936.

Rehearing Denied Feb. 24, 1936.

382

Beeman Strong and A. D. Moore, both of Beaumont, and Carl McLynn, of Austin, for appellant Yount-Lee Oil Co.

Phillips, Trammell, Chizum, Estes & Edwards' and Clayton L. Orn, all of Fort Worth, for appellant Arkansas Fuel Oil Co.

William McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for appellant Railroad Commission.

Pollard & Lawrence, of Tyler, for appellee.

MARTIN, Justice.

In this case appellee, Reprimo Oil Company obtained in the trial court injunctive relief against the Railroad Commission of Texas, its members, and two interveners.

The essential facts are:

In 1931 intervener Yount-Lee Oil Company acquired an oil and gas lease on the west 20 acres of an 84-acre tract of land in Gregg county. The title and interest of said intervener to the north 5 acres of said 20-acre tract subsequently passed to appellee. This is the tract in controversy. It was in the form of a rectangle, 578 feet east-west, 381 feet north-south. Intervener Yount-Lee Oil Company owned an oil and gas lease on the land immediately south and west of it, and intervener Arkansas Fuel Oil Company on that immediately north of it. The McMillan Petroleum Company owned the oil and gas lease on a long narrow strip of ten acres of land, the north portion of which lay adjacent to the said 5-acre tract. Prior to October, 1934, appellee had and still has a producing oil well located in the approximate center of its 5-acre tract. Immediately east thereof was a producing well on the McMillan tract, distant 150 feet east of the common boundary between the two tracts. Claiming the presence of "waste" and that its property was being confiscated by drainage into the McMillan well, appellee applied to the Railroad Commission of Texas for a permit to drill a second well as an offset to the McMillan, distant 300 feet immediately west of same and 150 feet west of its east boundary line. This being in violation of the spacing rule for wells in East Texas (1 to 10 acres) as contained in rule 37 of the Railroad Commission, appellee sought to bring itself within the exception to same, which exception allows more than the above to prevent waste or confiscation. Its application, after a hearing, was denied. It filed suit for relief, the nature of which sufficiently appears from the following paragraph of the trial court's judgment: "That said denial was under the facts in evidence arbitrary, unjust, unreasonable and discriminatory as to said plaintiff, and that said order of the Railroad Commission of Texas denying such application for a permit should be in all things set aside, and that said defendants Railroad Commission of Texas and the members thereof, said interveners, their agents, representatives, employees and all other persons should be permanently enjoined from in any wise interfering with the location, drilling and maintenance of said oil and/or gas well upon said property as sought by plaintiff in said application and be permanently enjoined from in any wise interfering with the production, saving and marketing of oil and/or gas therefrom, and from in any wise instituting or prosecuting any suit or action for the collection of any penalties or for contempt and criminal proceedings against the plaintiff."

We do not turn aside to discuss or detail the many contentions found in the briefs on file. Some of these will be indicated by the nature of the general discussion which follows.

In our opinion, the appellee failed to discharge the burden of proof which the law places upon it to establish the invalidity of the commission's order of refusal to grant a drilling permit.

■ That the Texas statute intended to preserve its natural resources of gas and oil and to protect these from "waste" is valid and constitutional, is no longer to be doubted. Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S. Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; State v. Jarmon (Tex.Civ.App.) 25 S.W.(2d) 936 (writ ref.); Danciger Oil & Refining Co. v. Railroad Commission (Tex.Civ. App.) 49 S.W.(2d) 837.

The validity of article 6014, and amendments thereto (Vernon's Ann.Civ.St. art. 6014), and the promulgation of rule 37 and others of like kind by the Railroad Commission in aid of such statute and to make effective its purpose, rest upon the right

of sovereignty under its police power to protect and to preserve natural resources in the interest of the general public.

"All property is held subject to the valid exercise of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals. The infliction of such loss is not a deprivation of property without due process of law; the exertion of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law. * * *

"The police power of a state embraces regulations designed to promote * * * the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety. Lake Shore & Mich. South Ry. Co. v. Ohio, 173 U.S. 285, 292, 19 S.Ct. 465, 43 L.Ed. 702, 704; Gilman v. Philadelphia, 3 Wall. 713, 729, 18 L.Ed. 96, 100; Pound v. Turck, 95 U.S. 459, 464, 24 L.Ed. 525, 527; Hannibal & St. J. Railroad Co. v. Husen, 95 U.S. [465] 470, 24 L.Ed. 527, 529." Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.(2d) 475, pages 478, 479.

■ Ownership prior to the passage of an ordinance under the police power of sovereignty does not create a vested right in property free from such police regulations. McEachern v. Town of Highland Park, 124 Tex. 36, 73 S.W.(2d) 487.

■ This sufficiently disposes of appellee's contention that it had a vested right to drill a well offsetting one on an adjacent tract at equidistant points from the common boundary line, this because such right was recognized by the Railroad Commission at the time of its acquisition of the 5-acre tract in controversy. There are, of course, limitations upon the above rule, not necessary to here set out, because in our opinion they are not presented by this record.

This entire case can be disposed of by answering two questions, viz.:

(1) Was appellee's property being confiscated or threatened with confiscation or appropriation by another or others, as a result of its inability to drill the well in question under the rules of the Railroad Commission?

(2) Is the drilling and operation of such well necessary to prevent "waste"?

■■ It has been said that the owner is entitled to recover only the approximate amount of oil and gas lying in place under his land. Atlantic Oil Production Co. v. Railroad Commission (Tex.Civ.App.) 85 S.W.(2d) 655. See, also, Sun Oil Co., et al. v. Gillespie (Tex.Civ.App.) 85 S.W.(2d) 652; Brown v. Humble Oil & Ref. Co. (Tex.Sup.) 83 S.W.(2d) 935, 99 A.L.R. 1107. If appellee is recovering its fair share of oil, either its own or that of another substantially equaling in quantity and market price its own, there could be no basis for its claim of confiscation. This is, we think, what the evidence fairly shows. Appellee introduced one witness, its petroleum engineer. He testified that the McMillan well was draining the 5-acre tract of appellee, but admitted that under proration the amount was infinitesimal. He admitted, and all the evidence conclusively shows, that appellee's well in the center of its tract drained oil for a distance of 300 feet around it. Its distance from the north and south lines of the 5-acre tract was only about 190 feet. It was testified, in substance, by witnesses for appellant, and was not disputed so far as we can find, that appellee's well is draining oil from surrounding land and that this one well will produce as much oil or perhaps more oil than appellee has in place under his 5-acre tract; that, while a small amount escapes from this tract to the McMillan well, an equal or larger amount is drained from other surrounding land to take its place.

■ The evidence upon the question of waste is briefly in substance and effect:

Appellee's engineer testified in part that he believed the East Texas field was a common pool with an average porosity, and the porosity, permeability and saturation were uniform throughout the entire producing area. If appellee drilled a second well, it would have a greater density than the McMillan Petroleum Company's tract or any other tract surrounding the lease, and, in order for the surrounding lease owners to protect against the drainage from appellee's lease, they would be forced to drill their leases to a density of a well to 2½ acres. If the surrounding leases were drilled to a density of one well to 2½ acres, the bottom hole pressure would be lowered some.

The evidence for appellant was in part: If the Reprimo Oil Company was granted a permit to drill another well, the adjoin-

ing lease owners would have to drill to the same density to protect their leases because the sand was porous. The drilling of additional wells in the area would unquestionably cause a low-pressure area, reducing the bottom hole pressure. The dense drilling would decrease the amount of oil recovered. The repeated withdrawal of oil from an area caused by dense drilling would create a low-pressure area, and water would move in much more rapidly, entrapping the oil in the tighter portions of the sand, which would limit the amount of oil recoverable from the area.

Even if the Arkansas Fuel Oil Company and Yount-Lee Oil Company each drilled an offset well to the second well on the 5-acre tract, the Reprimo Oil Company's lease would recover approximately 150,000 barrels of oil, which would virtually come from the surrounding tracts unless surrounding tracts were drilled to a density of one well to 2½ acres. The waste created by drilling well No. 2 would be greater than the amount of oil McMillan Petroleum Company's well would get from under appellee's 5 acres. The drilling of additional wells to protect drainage would tend to create a lower differential of pressure as compared with the nearby acres, and the effect of the decrease in the pressure would not be very serious in creating waste under present conditions, but, in the future, when the field produced considerably more oil, due to the fact the pressure would drop, there would be a greater hazard. In the later life of the field, such would cause infiltration of water to that area, and, as the field grew older, such condition would increase. If the entire field was drilled to a density of one well to 2½ acres, the ultimate recovery of oil would be considerably reduced.

Appellee's witness gave it as his opinion that the more wells were drilled, the more oil would be recovered; that two on appellee's land would ultimately produce more than one. There are no facts present here of any peculiar local geological structures or other factors which would operate to cause waste if a second well is not drilled and operated. The above opinion of the witness is perhaps the strongest testimony in this record to sustain the necessity of a second well to prevent waste. No facts are given to support it. It is in precise opposition to the terms of rule 37, requiring the spacing of wells to be 660 feet by 330 feet. Of this it was said by the Austin court: It has been judicially determined by this court that the 660-330 spacing rule (Rule 37) in the East Texas field "promulgated after an extensive hearing," was in effect an official, authoritative finding by the Commission that "wells in closer proximity producing equally would tend to create waste." Sun Oil Co. v. Railroad Commission (Tex.Civ.App.) 68 S.W.(2d) 609, 612, affirmed Bennett v. Sun Oil Co. (Tex.Sup.) 84 S.W.(2d) 693.

In our opinion there exists very substantial evidence in support of the Railroad Commission's action in denying a permit. We are not able to agree with the learned trial judge that its action was "arbitrary, unjust, unreasonable and discriminatory." See Shupee v. Railroad Commission, 123 Tex. 521, 73 S.W.(2d) 505; Railroad Commission v. Bass (Tex.Civ. App.) 10 S.W.(2d) 586.

■ Nor do we think the case is moot, as suggested by appellee, because the well in controversy has now been drilled. The judgment of the trial court, in response to appropriate pleadings, enjoined the operation as well as the drilling of the well. The main object of the appellee's suit was to secure to itself the production of oil from its well, not the mere naked right to put down a hole. Its right to operate the well is still a live and not a dead legal issue. Humble Oil & Ref. Co. v. Railroad Commission (Tex.Civ.App.) 68 S.W.(2d) 622.

The judgment of the trial court canceling the action of the Railroad Commission in refusing appellee a permit to drill is reversed, its injunction dissolved, and judgment here rendered in favor of the Railroad Commission.

Reversed and rendered.