BOARD OF INSURANCE COMMISSIONERS V. TEXAS EMPLOYERS' INSURANCE ASSOCIATION.

No. A-667. Decided January 16, 1946.
Rehearing overruled February 20, 1946.
(192 S. W. 2d Series, 149)

*Grover Sellers,* Attorney General, *J. A. Ellis, Wm. J. R. King, George W. Barcus,* Assistants Attorney General, and *Thompson, Knight, Harris, Wright & Weisberg,* of Dallas, for petitioners.

The requirements by petitioner for the submission and approval of plans of dividends and proposed distribution thereof by respondent are reasonable and gives to respondent, or any other insurance company, a standard by which petitioner is to be guided in approving and disapproving same. English Motor & Freight Co. v. Knox, 180 S. W. (2d) 633, 639; Gilley v. Missouri State Life Ins. Co., 116 Texas 43, 285 S. W. 807; Daniel v. Tyrell & Garth Ins. Co., 93 S. W. (2d) 372.

*Robertson, Leachman, Payne, Gardere & Lancaster* and *Neth L. Leachman,* all of Dallas, *Black, Graves & Stayton* and *Charles L. Black,* all of Austin, for respondent.

The order which the petitioner is seeking to enforce is void because by its provisions the Board is attempting to require the performance of an act, the authority for which has previously been withdrawn from the said Board. General Ins. Co. v. State Ins. Bd., 189 Okla. 524, 118 Pac. (2d) 392; Scanlan v. Home Ins. Co. 79 S. W. (2d) 186; Southwestern Bell Tel. Co. v. Public Service Com. 262 U. S. 276.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This suit was instituted by the respondent, the Texas Employers' Insurance Association, against the petitioner, the Board of Insurance Commissioners of Texas, to declare invalid an order of such Board of October 18, 1944, and to enjoin its enforcement. In a hearing of the application for temporary injunction the trial court adjudged that the order, except Section 1 thereof, was null and void, being beyond the powers of the Board, and granted a temporary injunction enjoining its enforcement, with the exception stated, and with certain limitations. The judgment was affirmed by the Court of Civil Appeals. 189 S. W. (2d) 47.

The order complained of was as follows:

"It is therefore ordered:

"1. That any agreement to waive, or attempt to waive, or any waiving of, directly or indirectly or any agreement to eliminate or attempt to eliminate, or any elimination of, directly or indirectly, any portion of the surcharge premium under Retro-

spective Rating Plans B or C, is hereby prohibited on on in connection with any policy in effect on and after January 1, 1945.

"2. That the use of any so-called 'cost-plus' plan by endorsement or otherwise or any other type of plan or agreement, which affects, directly or indirectly, the premium cost to the insured employer, not approved by the Board of Insurance Commissioners, is hereby prohibited on or in connection with any policy in effect on and after January 1, 1945.

"3. That the use of any so-called 'stop-loss' plan or agreement or reinsurance, which, directly or indirectly, affects the premium of the insured employer is hereby prohibited on or in connection with any policy in effect on and after January 1, 1945.

"4. That all carriers writing Workmen's Compensation Insurance on a participating basis or plan, are hereby required to file with the Casualty Insurance Commissioner on or before January 1, 1945, its plan or proposed plan of determining and distributing dividends in complete detail, i. e.:

"a. A level rate of dividend plan.
"b. A 'sliding scale' dividend plan.
"c. Dividend plans by and for groups.
"d. Any other formula or plan.

"Each carrier so writing on a participating basis or plan is required to secure the approval of the Board of Insurance Commissioners of the use of its plan before such plan is used in the solicitation or writing of Workmen's Compensation Insurance or in any other manner. Each carrier desiring to pay dividends is required to file with the Board of Insurance Commissioners its application for authority to pay dividends based upon its plan. Each carrier is required to furnish to the Board of Insurance Commissioners such information concerning the proposed distribution of the dividends desired to be paid, as may be deemed necessary by the Board of Insurance Commissioners to enable the Board to pass upon whether such dividend payments are to be approved, and is required to secure the approval of the Board authorizing the payment of such dividends before the same are actually paid.

"5. That all participating provisions incorporated either in the policy, in endorsements, or in so-called 'plan of operation' endorsement now in use and heretofore approved by the Board of Insurance Commissioners, are hereby specifically withdrawn effective January 1, 1945.

"6. That all participating provisions either in the policy or endorsements to be used on or in connection with any policy

in effect on and after January 1, 1945, must be approved by the Board of Insurance Commissioners, before it becomes effective.

"7. That the use of any plan, contract, agreement, or resolution affecting the Workmen's Compensation policy contract as to rate, premium, classification, dividend or coverage not specifically approved and authorized by the Board of Insurance Commissioners, is hereby prohibited on or in connection with any policy in effect on and after January 1, 1945.

"8. That each insurance carrier writing Workmen's Compensation Insurance on a participating basis or plan, desiring to change its dividend plan or its method of determining dividends at any time subsequent to the dividend plan approved by the Board of Insurance Commissioners to be used on policies in effect on and after January 1, 1945, shall, before making any such change, submit such proposed dividend plan to the Board and secure approval of such plan before the same shall be used in the solicitation or writing of Workmen's Compensation Insurance or in any other manner.

"It is not intended by the Board of Insurance Commissioners in entering this Order to recognize the validity of any agreements which have been entered into between any insurance company and any insured employer, or which may be entered into in the future, not approved by the Board of Insurance Commissioners, which agreement or agreements may be illegal."

Paragraphs two to eight inclusive were declared to be beyond the powers of the petitioner Board and therefore void.

The injunction was granted with the following limitation:

"The temporary injunction herein granted does not prohibit the Board of Insurance Commissioners from exercising its statutory powers to make and promulgate and enforce classifications of hazards and the rates of premium respectively applicable to each, a system of experience rating, from requiring adequate reserves before it approves an application for the payment of a sum out of savings or surplus for dividend distribution, as provided by Articles 4914 and section 23 of Article 8308, R. C. S. Texas 1925, nor from requiring sworn statements as authorized by Article 4910, R. C. S. Texas 1925, nor from requiring the filing of an annual statement as well as making examinations of plaintiff Association as authorized by Section 16a of Article 8308, R. C. S. Texas 1925 (Vernon's Ann. Civ. St. art. 8308, section 16a)."

The gist of the order and of this suit is to be found in Section 4. Sections 5, 6, 7, and 8 are merely complements of and

ancillary to Section 4. Section 4 requires all carriers writing workmen's compensation insurance on a participating basis or plan to file with the Board on or before January 1, 1945, "its plan or proposed plan of determining and distributing dividends in complete detail" including dividend plans "by and for groups." It further provides that every carrier, including the respondent Association, must secure the approval by the Board of the use of its plan before such plan is used in the solicitation or writing of workmen's compensation insurance. Section 8 provides that any such insurance carrier, including the Association, desiring to change its dividend plan at any time subsequent to the approval by the Board shall, before making any such change, submit such proposed dividend plant to the Board and secure approval before the same shall be used in the solicitation or writing of workmen's compensation insurance. Thus, it appears that the real purpose of the order is an attempt by the Board to control in advance the distribution of profits in the form of dividends upon the ground that the distribution of dividends may affect the premium rate, and this power is assumed without setting forth any standard to be followed by the Board in giving or withholding its approval, and, respondent contends, without any authority by law.

It is admitted the Association has ample reserve to more than meet the regulations of the Board and that it has an ample surplus amounting to $2,500,000, or more than twelve times that which it is required by Section 16a of Article 8308, V. A. C. S., to maintain in order to protect its subscribers from assessment. The Association has each year, prior to the distribution of dividends to its members, submitted to the Board for its approval the lump sum amount it proposes to distribute at the end of the year, and is willing to continue such practice, but insists that the power of approval or disapproval thereof by the Board is limited to whether or not the distribution of that lump sum will impair the Association's solvency. It denies the authority of the Board to supervise in advance the detailed plan for the payment of dividends or the distribution of subscribers into groups for dividend purposes.

In order to determine the authority of the Board in the above respects it becomes necessary to review in some detail legislation relating to the Texas Employers' Insurance Association and the regulatory powers vested in the petitioner Board, particularly with reference to the grouping of subscribers and the declaration and payment of dividends "by and for groups." In order to properly construe the statutes involved, those of the

past, including some repealed, lend color and meaning to those now existing.

■ The Texas Employers' Insurance Association is not merely an insurance company operating for profit under a license. It is a creature of the compensation law itself. Its authority to write compensation insurance is more of a duty than a privilege. It is not a private corporation in the true sense, but is an agency created by the Legislature for the proper administration of the compensation law. "It has no functions or powers which it may exercise for any other purposes." Middleton v. Texas Power & Light Co., 108 Texas 96, 185 S. W. 556. The Association was created by Part III of the Workmen's Compensation Act of 1913. Chapter 179, Acts of 33 Leg., Regular Session, pp. 434-436.

Due to the importance of Sections 13-17 of the Act of 1913, they are here reproduced:

"Sec. 13. The board of directors shall distribute the subscribers into groups in accordance with the nature of the business and the degree of hazard incident thereto. Subscribers within each group shall annually pay in cash such premiums as may be required to pay the compensation herein provided for the inquiries (injuries) which may occur in that year.

"Sec. 14. The association may in its by-laws and policies fix the mutual contingent liability of the subscribers for the payment of losses and expenses not provided for by its cash fund, but such contingent liability of a subscriber shall not be less than an amount equal to and in addition to the cash premium.

"Sec. 15. If the Association is not possessed of cash funds above its insured premiums sufficient for the payment of incurred losses and expenses, it shall make an assessment for the amount needed to pay such losses and expenses upon the subscribers liable to assessment therefor in proportion to their several liability. Every subscriber shall pay his proportional part of any assessment which may be levied by the Association, in accordance with the laws and his contract, on account of injuries sustained and expenses incurred while he is a subscriber.

"Sec. 16. The board of directors may, from time to time, by vote fix the amount to be paid as dividends upon the policies expiring during each year after retaining sums sufficient to pay all compensation which may be payable on account of injuries sustained and expenses incurred. All premiums, assessments and dividends shall be fixed by and for groups as heretofore provided in accordance with the experience of such groups, but all

the funds of the Association and the contingent liability of all of the subscribers shall be available for the payment of any approved claim for compensation against the Association.

"Sec. 17. Any proposed premium, assessment, dividend or distribution of subscribers shall be filed with the Commissioner of Banking and Insurance and shall not take effect until approved by him after such investigation as he may deem proper and necessary."

The Act of 1913 contained no reference to reserves or a surplus. Those terms first appeared in the compensation law in 1917. The Act of 1913 did deal with grouping of subscribers, dividends and assessments. Section 13 of the Act of 1913 authorized the board of directors of the Association to "distribute the subscribers into groups in accordance with the nature of the business and the degree of the hazard incident thereto." Section 17 provided that "Any proposed premium, assessment, *dividend or distribution of subscribers* shall be filed with the Commissioner of Banking and Insurance and shall not take effect until approved by him." (Italics ours). Section 17 remained in force from 1913 until 1923 during which time the Association submitted to the Commissioner of Banking and Insurance all of its groupings for dividend purposes. It therefore appears that from the beginning of the compensation law the board of directors of the Association was required to group its subscribers under a specified standard, and to declare and pay dividends and impose assessments "by and for groups." It further appears that under the original Act the power of the Commissioner of Banking and Insurance extended not only to dividends but to the grouping of subscribers for dividend purposes.

In 1917 the entire Workmen's Compensation Law was amended including that part of it creating the Association and defining its powers. Chapter 103, General Laws, Regular Session 35th Legislature, pp. 269-294. Several material changes were affected by the 1917 Act. In Section 13 thereof Part III, which is identical with Section 13 of the present law (Art. 8308), the grouping of subscribers by the board of directors was required to be made in accordance with the experience of each group with respect to premiums and losses instead of distributing the subscribers into groups in accordance with the "nature of the busineess and the degree of hazard incident thereto." Section 16, which is substantially the same as Section 16 of the present statute (Art. 8308), provided that the board of directors of the Association should vote from time to time "to fix the amount to be paid as dividends on the policies in force during

each calendar year" after retaining sums sufficient to pay all losses and expenses incurred during the calendar year. Section 16a provided that when at the end of any calendar year the Association had an admitted surplus of $200,000 the liability of its members to assessment should be suspended for so long as the Association should maintain unimpaired such surplus. Section 16c, which was later repealed, provided that the board of directors should determine hazards by classes and fix the rates of premium applicable to the pay roll of such classes at the lowest possible rate consistent with the maintenance of solvency and the creation of adequate reserves and a reasonable surplus. Section 17 of the Act of 1913 was carried into the Act of 1917 in substantially the same form, which purportedly preserved the power of the Commissioner of Insurance and Banking to approve or disapprove the payment of dividends and grouping of subscribers, as well as rates of premiums and assessments. Section 23, later amended to provide for reinsurance and investments in securities (Chap. 177, General Laws, Regular Session 38th Legislature, p. 384), provided that the Association should set up and maintain "reserves adequate to meet anticipated losses and carry all claims to maturity and policies to termination, which reserves shall be computed in accordance with such rules as shall be approved by the Commission of Insurance and Banking."

In 1923 the Legislature passed Senate Bill No. 301, Chapter 182, General Laws, Regular Session 38th Legislature, which transferred certain powers from the Association to the then named State Insurance Commission, now the Board of Insurance Commissioners. Article 4682a, V. A. C. S. The act provided that the Commission should thereafter make, establish and promulgate all classification of hazards and rates of premium respectively applicable to each as contemplated and provided for by the compensation Act of 1917, and should prescribe policy forms to be used by all companies or associations writing workmen's compensation insurance in this State. Section 9 of the 1923 Act, now article 4914, V. A. C. S., conferred upon the Commission the power to reequire adequate reserves before approving dividends. Such section is as follows:

"Nothing in this chapter shall be construed to prohibit the operation hereunder of any stock company, mutual company, reciprocal or inter-insurance exchange, or Lloyd's association, to prohibit any stock company, mutual company, reciprocal, or inter-insurance exchange or Lloyd's association, issuing participating policies, provided no dividend to subscribers under the Workmen's Compensation Act shall take effect until the same

has been approved by the Commission. No such dividend shall be approved until adequate reserve has been provided, said reserves to be computed on the same basis for all classes of companies or associations operating under this chapter, as prescribed under the insurance laws of the State of Texas."

Prior to the passage of the 1923 Act the association established classification of hazards and prescribed its own policy form without the approval or disapproval of the Commissioner, but the rates of premiums were fixed by the Association subject to the approval of the Commission. Under the Act of 1923 these powers were taken from the Association and vested exclusively in the State Insurance Commission, now the petitioner Board.

In the 1923 Act Sections 16c and 17 of the 1917 Act were expressly repealed. Section 16c had theretofore empowered the Association to determine the hazards by classes and to fix the rates of premium for such classes. That authority was transferred to the State Insurance Commission. Section 17, which was repealed, had required that all rates of premium, assessment or dividends or *any distribution of subscribers* be approved by the Commissioner before they became effective. It was by virtue of this Section that the Commissioner of Insurance and Banking had theretofore not only approved dividend payments but also passed on the distribution of subscribers into groups for dividend purposes. With the repeal of that section obviously we must look to some other statute for such authority in the Board of Insurance Commissioners.

At the time of the passage of the 1923 Act Sections 13, 15 and 16 of the Act of 1917 were substantially the same as the corresponding sections of the present article 8308. Those sections expressly authorize the board of directors of the Association to distribute its subscribers into groups for the purpose of determining dividends and assessments, to make assessments within certain specified limitations, and to fix dividends and assessments by and for groups. Prior to the repeal of Section 17 those functions were performed by the Association with the approval of the Commissioner of Insurance and Banking. Since that time the Association alone has exercised such powers without supervision from any other authority, and its right in this respect was not challenged until the entry of the above order by the petitioner Board.

■ From a careful examination of the pertinent statutes we have reached the conclusion that the Board of Insurance Commis-

sioners has no authority to regulate the distribution of profits in the form of dividends except in the manner prescribed in Section 9 of the 1923 Act, now Art. 4914. That Section merely provides that no dividend to subscribers shall take effect until approved by the Commission and that no dividend shall be approved until adequate reserves have been provided. It redefines the Insurance Board's powers to approve and disapprove dividends. It grants that authority to the Board under a specific and restricted standard, one founded not on the regulation of profits and dividends before they accrue, but only upon the theory of guaranteeing the solvency of the Association by protecting its reserves. The criterion thus fixed is that no proposed dividend shall be approved or take effect until adequate reserves have been provided. It therefore interrelates the Board's power over dividends with its authority over adequate reserves, and leaves the grouping of subscribers for dividends and assessments to the internal management of the Association. In this manner the public and private interests involved are distinguished.

■ Section 16 of Article 8308 expressly prescribes what the board of directors of the Association shall consider before fixing by vote the amount to be paid as dividends on the policies in force during each calendar year. Such directors must retain sums sufficient to pay compensation for injuries and expenses incurred during the calendar year. Obviously, it was contemplated that the fixing of dividends was to be at the end of the calendar year and not at its beginning when profits, losses and expenses cannot be accurately anticipated. If the Association at the end of the year fails to observe the requirements for adequate reserves the Board of Insurance Commissioners may in the public interest exercise its power of disapproval of the proposed dividends. But such power is limited to the standard above mentioned with reference to adequate reserves. It does not include authority to supervise in advance the detailed plan for the payment of dividends or the distribution of subscribers into groups for dividened purposes. Consequently, the Board exceeded its authority in issuing the order requiring its approval of the Association's plan for determining and distributing dividends before the same might be used in the solicitation or writing of compensation insurance. This conclusion, however, is not intended to affect the Board's authority to classify hazards, fix premium rates, prescribe policy forms, require adequate reserves before approving dividend payments, nor in performing any other duties conferred upon it by law. We simply hold that in the respects mentioned the Board has attempted to invade a field foreign to its authority and usurp the prerogatives of the

board of directors of the Texas Employers' Insurance Association.

What we have said disposes of the principle question presented and the heart of this controversy. We approve the holdings of the court of civil appeals with reference to other sections of the order and we see no necessity for writing further concerning them.

The judgments of both courts below are affirmed.

Opinion delivered January 16, 1946.

Rehearing overruled February 20, 1946.