## Huntsville Independent School District et al v. Edgar McAdams et al.

No. A-2111. Decided June 8, 1949.
(221 S. W., 2d Series, 546.)

*Bracewell & Wright* and *J. S. Bracewell*, all of Huntsville, and *Bracewell & Tunks*, of Houston, for petitioner.

The Court of Civil Appeals erred in its interpretation of the statute (Article 2786a R. S.) to the effect that such statute imposed a mandatory duty upon a school board, upon being petitioned to do so, to call an election to cancel the authority to issue bonds theretofore voted, where there was no showing that the purpose for which the bonds were authorized had been completed or abandoned, and no showing as to any change in circumstances subsequent to the authorization of the bonds, and the bonds had not been issued. Cameron v. City of Waco, 8 S. W. (2d) 249; Davis v. City of San Antonio, 135 S. W. (2d) 306; Smith v. Reaves, 208 S. W. 545.

*Gordon M. Burns* and *J. G. Davis*, of Huntsville, for respondent.

The Court of Civil Appeals committed no error in its construction of Article 2786a. Neither was the statute ambiguous. Seabrook Ind. Sch. Dist. v. Brown, 195 S. W. (2d) 828; Ex parte Lipscomb, 111 Texas 409, 239 S. W. 1101.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

On July 10, 1947, Huntsville Independent School District, petitioner, held an election to determine whether it could issue $350,000 of bonds for the purpose of constructing and equipping public free school buildings of material other than wood and purchasing additional building sites and whether a tax should be levied to pay interest and create a sinking fund to pay the bonds at maturity. This election, regular in all respects, showed a majority in favor of issuing the bonds and levying the tax.

August 1, 1947, the district's board of trustees received a petition signed by 52 persons, at least 20 of whom were qualified property taxpaying voters in the district, requesting the board to call an election, under Art. 2786a, Vernon's Anno. Civ. Stat., for the purpose of letting "the property tax payers" of the district vote on whether or not to *revoke and cancel the authority of the district and its trustees "to issue* $350,000 worth of bonds, which were voted by a majority of the property tax payers * * * on or about the 17th day of July, 1947, * * * as provided for

by the laws of the State of Texas, and submit to the qualified voters and property owners of said * * * District the proposition whether the *authority heretofore given to the Trustees * * * to issue* $350,000 worth of *bonds shall be revoked and cancelled, and that all proceedings* heretofore *had* are (or) *given* by the property tax paying voters of the * * * District *to the trustees to issue* $350,000 worth of *bonds be revoked,* cancelled and held for naught." (Italics ours.) On August 2, 1947 a second petition, in idenical language as the first and signed by 52 persons, at least 20 of whom were qualified property taxpaying voters in the district, was also received by petitioner's board. The trustees took no action on these petitions.

Neither when these petitions were filed nor at any time material to the issues in this case had any of the bonds been sold or contracted to be sold; but the trustees had advertised them for sale, requesting bids to be submitted on August 5, 1947. Because of the present litigation no record on the bond issue has ever been submitted to the Attorney General for his approval, therefore neither have any of the bonds been registered with the Comptroller, as required by Art. 2786, V. A. C. S.

Upon the trustees' failure to call the election requested in the petitions, Respondent Edgar McAdams et al, signers of the petitions, filed this suit seeking (1) a writ of mandamus directing petitioners forthwith to call an election to determine whether the bonds shall be revoked and cancelled and (2) an injunction restraining them from selling, offering to sell or contracting to sell the bonds pending the election. The trial court entered a judgment as prayed by respondents, which was affirmed by the Court of Civil Appeals. 217 S. W. (2d) 51.

This case turns on the proper construction of Sec. 1, of Art. 2786a, supra, which was enacted in 1933 by a House vote of 111 to 0 and a Senate vote of 27 to 0, as Chap. 103, Acts 43rd Leg., R. S., 1933, p. 229, and which, as relevant to present issues, reads as follows "In the event any school bonds voted or issued, or any portion of such bonds voted or authorized by any * * * independent school district * * * remain unsold, then * * * the board of trustees in the case of an * * * independent school district, may, upon its own motion, or upon petition of not less than twenty, or a majority of the qualified property taxpaying voters thereof as shown by the records of the County Tax Collector, shall order an election to determine whether or not such school bonds shall be revoked and cancelled. * * *

■ Respondents insist that this statute is unambiguous and

must be applied literally as an expression of the legislative intent. Petitioners contend that it is ambiguous and therefore must be construed in order to ascertain its true meaning.

If respondents' contention is sound the will of a majority of the property taxpaying voters of a school district to issue bonds to construct school buildings can be utterly defeated either by the district's own board of trustees or by a minority of 20 of its property taxpaying voters, no matter how overwhelming the majority nor how urgent the need for more buildings may be. For, just as soon as it is known that bonds have been voted twenty dissatisfied voters can petition for an election; and that they will lose it is of no moment because they can immediately petition for a second election and so on forever. That such procedure is not only likely but has actually been resorted to is shown in the case of Seabrook Independent School Dist. et al v. Brown et al (Civ. App.), 195 S. W. (2d) 828 (er ref.), wherein a petition for a second election for the cancellation of $150,000 of bonds was filed on the day before the first election was held. Moreover, under respondents' contention a district's board of trustees could defeat a unanimous vote of its property taxpaying voters to issue bonds throughout their tenure of office by the simple expedient of calling one election after another to revoke and cancel the bonds. Did the Legislature by enacting Art. 2786a, supra, without a dissenting vote in either branch, intend any such result? If the statute is free from ambiguity we must hold that it did; otherwise, we must look beyond the terms of the statute to discover the legislative intent.

While the fact may not be of any special significance it is interesting to note in passing that although respondents insist that the language of the statute is clear, the petition some of them signed requested an election to determine whether the *authority* of petitioners *to issue the bonds shall be revoked and cancelled,* whereas they here seek an election *to revoke and cancel the bonds.*

The statute says that when *any* bonds *voted or issued* or *any portion of such bonds voted or authorized remain unsold* an election may be had to cancel them. Do the words "in the event *any*" or *"any portion" "remain unsold"* mean all the bonds voted or only a part of them? Of the several definitions of the verb *remain* given by Webster's New International Dictionary, Sec. Ed., only the first four can apply to the word as it is used in the statute. They are: "1. To be left after others have been removed or destroyed; to be left after a number or quantity has been subtracted or cut off. 2. To be left as not included or

comprised; to be left as a portion not treated, as, that *remains* to be proved. 3. To stay behind while others withdraw. 4. To continue unchanged in place, form or condition, or undiminished in quantity; to abide; endure, last; continue." If the first three definitions are to be applied the words "remain unsold" imply that a part of the bonds have been sold; if the fourth is to be accepted then the words mean that the bonds voted have continued "undiminished in quantity." Thus we have ambiguity.

Moreover, that the effort made by respondents to nullify the decision of the majority of the Huntsville Independent School District before anything had been done to effect their will is not contemplated by Art. 2786a, supra, is apparent from the language of section 2 of the Act, which provides that "the result of such election, whether favorable to the cancellation of such bonds or not, shall in the case of * * * independent school districts be duly recorded by the board of trustees, and * * * the board of trustees shall cancel and burn all such bonds and forward to the State Comptroller a certified copy of the minutes of such destruction and cancellation. The State Comptroller shall thereupon cancel the registration of said bonds on the records of his office." The reason for this latter requirement becomes evident when we refer to the direction of Art. 2786, supra, that building bonds voted by a majority of the taxpaying voters in an independent school district "shall be examined and approved by the Attorney General and if approved registered by the Comptroller." Here the bonds had been "voted" and "authorized" but had not been "issued" as described in Art. 2786a, so they were not and could not have been examined and approved by the Attorney General and therefore were not and could not have been registered by the Comptroller as contemplated by Sec. 2, of Art. 2786a.

Therefore, we conclude that there is ambiguity in the language of the statute as contended by petitioners.

■ It has many times been authoritatively determined in this state that when a statute is ambiguous the emergency clause is often an important aid, and sometimes may be "peculiarly so," in determining the legislative intent. Lawson v. Baker (Civ. App.), 220 S. W.. 260 (er. ref.) ; McPherson v. Camden Fire Ins. Co. (Com. App.), 222 S. W., 211; Markwell v. Galveston Co. (Civ. App.), 186 S. W. (2d), 273 (er. ref.) ; Anderson v. Penix, 138 Texas, 596, 161 S. W. (2d) 455; Popham v. Patterson, 121 Texas, 615, 51 S. W. (2d) 680; Trawalter v. Schaefer, 142 Texas, 521, 179 S. W. (2d) 765. This arises from an application of the familiar "four-corners" rule.

The legislative intent in enacting Art. 2786a is clearly revealed by the emergency clause of the Act, Sec. 7 of Chap. 103, Acts 1933, 43rd Leg., p. 229. It reads: "The fact that many school districts have voted bonds for the construction of school buildings *and have found it unnecessary to expend the entire proceeds of such bond issues for that purpose* creates an emergency," etc. (Italics ours.) Certainly there is no room in that language for any such election as that sought in this case. It is evident that what the legislature meant was that an election could be held to revoke bonds duly voted, authorized and issued only when a later change in conditions showed that it would be unnecessary to spend their proceeds. And the only later change in conditions shown in this case is a greater need for more buildings.

■ That this emergency clause discloses the true legislative intent in the unanimous passage of Art. 2786a is quite plain when we consider that a fundamental policy adopted with the founding of this state and consistently and continuously served ever since is the establishment, support, maintenance and expansion of a public school system. As our scholastic population has increased a majority of our people have willingly shouldered a growing tax burden to expand our school facilities and to provide adequate instruction for more children. Therefore, for this court now to hold that the legislature meant by the statute to empower 20 voters in the Huntsville Independent School District to nullify the deliberately expressed will of a majority of the property taxpaying voters in the district to issue bonds whereby to erect new school buildings made necessary by the recent unprecedented growth in population would be to hold that the legislature without a single dissenting vote knowingly turned its back on a public policy which had been fixed and consistently nourished for a hundred years. We are convinced that the legislature meant no such thing. It is because of such situations as that which now confronts us that this court declared in Walker v. Haley, 110 Texas, 50, 214 S. W. 295, "It is the intention of a law which is the law, and once truly ascertained, it should prevail, even against the strict letter of the law." And an eminent text writer has said that if a literal interpretation of a statute "leads to absurd results, the words of the statute will be modified by the intention of the legislature. The modern cases also indicate that courts today rather than beginning their inquiry with the formal words of the act consider from the start the legislative purpose and intention. This tendency is to be commended for it is more consonant with the proper judicial use of statutory materials." Sutherland Statutory Construction (3rd Ed. by Horack) Vol. 2, Sec. 4701, p. 333.

Approaching the problem from another angle, 50 Am. Jur., Sec. 226, p. 209, declares: "There is also authority for the rule that uncertainty as to the meaning of a statute may arise from the fact that giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature." And when ambiguity appears it should be resolved in favor of a beneficial operation of the law and that construction given which will avoid all objectionable or injurious consequences. Ibid., sec. 368, p. 372; sec. 377, p. 385.

■ So we hold that Art. 2786a, supra, does not entitle respondents to relief. There is nothing in Seabrook Independent School District et al v. Brown et al, 195 S. W., (2d) 828, supra, contrary to our present conclusion. There the holding was that a contract to sell the bonds constituted a sale, hence no bonds remained unsold.

Both judgments below are reversed and judgment is here rendered for petitioners.

Opinion delivered June 8, 1949.

No rehearing applied for.