SOUTHWESTERN SAVINGS AND LOAN ASSOCIATION OF HOUSTON, TEXAS V. J. M. FALKNER, BANKING COMMISSIONER OF TEXAS.

No. A-7184. Decided January 13, 1960.
Rehearing Overruled March 2, 1960.
(331 S.W. 2d Series 917)

418

Rex G. Baker, Roberts, Baker, Richards, Elledge & Heard,

*Dow H. Heard* and *T. E. Richards, Jr.,* all of Houston, *Powell, Rauhut, McGinnis & Reavley,* of Austin, for petitioner.

The Honorable Court of Civil Appeals erred in holding that the Banking Commissioner has the power under Article 881a-1 through 881a-69 to approve or disapprove the opening of branch offices by a State chartered building and loan association. Also in holding that said commissioner and the Finance Commission of Texas have, under said statute, authority to promulgate rules and regulations requiring said petitioner to obtain the prior approval of the Commissioner before opening branch offices. Said Court of Civil Appeals also erred in failing to sustain the trial court's finding that petitioner had the right to open any branch office for which it had made a substantial commitment prior to January 29, 1958, and in failing to sustain the trial court's finding that substantial commitments had been made on the six branch offices. Scanlan v. Home Ins. Co., 79 S.W. 2d 186; State v. Mauritz-Wells Co., 141 Texas 634, 175 S.W. 2d 238, 241; City of Dallas v. Rosenthal, 239 S.W. 636, error refused n.r.e.

*Will Wilson,* Attorney General, *C. K. Richards,* Assistant Attorney General, *Thomas Black* and *John W. Stayton,* Special Assistant Attorneys General, for respondent, Banking Commissioner.

Cited: Imperial Irr. Co. v. Jayne, 104 Texas 395, 138 S.W. 575; Railroad Com. v. Shell Oil Co., 146 Texas 286, 206 S.W. 2d 235.

Mr. Justice Calvert delivered the opinion of the Court.

Suit was instituted by Southwestern Savings and Loan Association of Houston, Texas, hereinafter referred to as petitioner, against J. M. Falkner, Banking Commissioner of the State of Texas, hereinafter referred to as respondent, seeking a declaratory judgment decreeing that petitioner might open branch offices without first obtaining the approval of the Commissioner, and also seeking an injunction restraining the Commissioner from taking any action to prevent the petitioner from opening and operating six branch offices. The trial court denied the prayer for a declaratory judgment, but enjoined the respondent from interfering with the opening of the six branch offices. The Court of Civil Appeals affirmed the holding of the trial court denying the declaratory judgment, but reversed that portion

of the judgment granting the injunction and dissolved the injunction. 320 S.W. 2d 164.

Petitioner is a building and loan association properly incorporated under the laws of Texas, having its office and principal place of business at 3401 South Main Street, Houston, Texas. In 1954 petitioner notified the Commissioner that it desired to open six branch offices in the Greater Houston area and gave the proposed locations. This has been treated by the lower courts as an application for permission to establish branch offices. The Banking Commissioner refused to act on the application on the ground that he had no authority to approve or disapprove the establishment of branch offices. His refusal to act stemmed from an earlier opinion of office counsel for the Banking Commission, which was to the effect that the Banking Commissioner lacked such authority.

Following failure of the Comimssioner to act on its application, respondent proceeded with preparations for establishment and opening of the branch offices and actually opened and began doing business at one such office at 5306 Palm Center in Palm Center Shopping Center on September 1, 1956. On March 11, 1957 the Attorney General advised the Commissioner that prior approval of the Commissioner was prerequisite to the establishment and operation of branch offices. On April 26th, in response to an inquiry from respondent, petitioner advised that the branch office at 5306 Palm Center was in operation and that two others would be opened on June 1st. Thereupon, petitioner's attention was called to the Attorney General's opinion of March 11th. This suit was filed on December 10, 1957. At that time only the one branch office had been opened. On January 29, 1958 the Building and Loan Section of the Finance Commission of Texas, acting pursuant to authority contained in Art. 342-114, V.A.T.S., and respondent Commissioner promulgated certain Rules and Regulations governing the granting of charters to building and loan associations and the establishment of branch offices. At the time of trial petitioner had not sought approval of its application under and in keeping with the rules and regulations so promulgated.

The trial court found that at the time the rules and regulations were promulgated the branch office at 5306 Palm Center had been opened and that petitioner "had spent substantial sums, made substantial commitments and spent many months' time of its officers, agents and employees * * * in preparing for the opening of five other branch offices." The trial court concluded

that prior to adoption of the rules and regulations there were neither statutes nor valid rules and regulations promulgated by the Building and Loan Section of the Finance Commission prohibiting the opening of the branch offices without prior approval of the Commissioner. It was obviously because of that conclusion that the trial court granted the injunction prayed for. In dissolving the injunction the Court of Civil Appeals held that the statutes as they existed prior to promulgation of the January rules and regulations did require prior approval of the Commissioner before the opening of branch offices. We agree with the Court of Civil Appeals.

1 Regulation of building and loan associations is provided for in Articles 881a-1 through Article 881a-69, Vernon's Annotated Texas Statutes. There is no provision in the Articles which expressly authorizes building and loan associations to establish and operate branch offices. That authority may reasonably be implied, however, from the provisions of a number of the Articles, e.g., 881a-10, 881a-13, 881a-17, 881a-29(3). Neither is there express provision in any of the Articles which requires approval of the Commissioner for the establishment and operation of branch offices. We believe, however, that requirement of such approval is necessarily implied by the provisions of Articles 881a-2 and 881a-7.

Article 881a-2 deals specifically and expressly with the granting of charters. The Article provides that before granting a certificate the Commissioner shall ascertain "* * * whether the public convenience and advantage will be promoted by allowing such proposed building and loan association to be incorporated and engaged in business, and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed building and loan association." Article 881a-7 directs that the Commissioner "shall have supervision over and control of all building and loan associations doing business in this state * * * and shall be charged with the execution of the laws of this state relating to such associations." If the power to establish and operate branch offices is to be implied and the public policy declared by the Legislature in Article 881a-2 for the protection of stockholders, depositors and the public generally is to be enforced, some restraint on the establishment and operation of branch offices must also be implied; otherwise, the determination made by the Commissioner in the first instance is rendered nugatory.

It is undoubtedly the purpose of Article 881a-2 to protect against the evils of excessively zealous competition through control of the number of building and loan associations in a specified area. That purpose can be completely frustrated if branch offices can be opened without the approval of the Commissioner at any place selected by the directors of an existing association. Having been denied a charter to operate in area A but granted a charter to operate in area B, an association could then establish a branch office in area A and thus by indirection secure rights and privileges which had been denied to it on the statutory ground that the establishment of the office was inimical to the public interest.

**2** A statute should not be shorn of its effectiveness if its purpose can be achieved by a reasonable interpretation. Huntsville Independent School Dist. v. McAdams, 148 Texas 120, 221 S.W. 2d 546; Haverbekken v. Hale, 109 Texas 106, 204 S.W. 1162. That principle should control here rather than the one for which petitioner contends, i.e., that administrative officers and boards can exercise only such authority as is conferred upon them by the Legislature. Board of Insurance Commissioners v. Guardian Life Ins. Co. of Texas, 142 Texas 630, 180 S.W. 2d 906; Humble Oil & Refining Co. v. Railroad Commission, 133 Texas 330, 128 S.W. 2d 9. We hold that the power of the Banking Commissioner to approve or disapprove the establishment and operation of branch offices of building and loan associations is necessarily implied by a reasonable interpretation of Articles 881a-2 and 881a-7.

**3** Petitioner contends that the statutes are unconstitutional if they be given the interpretation we have given them because they set no standards by which approval or disapproval of branch offices is to be determined. Generally a legislative delegation of rule-making authority must fix standards in order to be valid. Housing Authority v. Higgenbotham, 135 Texas 158, 143 S.W. 2d 79, 130 A.L.R. 1053. But under our interpretation of Article 881a-2 the same basic standards are set for the approval or disapproval of applications to open branch offices as are set for the granting of an application for a charter in the first instance. The statutory standards of public convenience and advantage, and adequate population to assure reasonable support, are sufficient statutory basis for the rules and regulations. Trapp v. Shell Oil Co., 145 Texas 323, 198 S.W. 2d 424; Housing Authority of City of Dallas v. Higginbotham, supra.

Petitioner contends that even if approval of the Commis-

sioner is required for the opening of branch offices, it is nevertheless entitled to affirmance of the trial court's injunction against interference by the Commissioner with the opening of its six branch offices. It predicates this contention upon the finding of the trial court that the one office had been opened and that substantial sums of money and time had been spent and substantial commitments made toward establishing the other five.

Petitioner does not contend that the Commissioner is estopped from requiring it to secure his approval before opening the branch offices. On the contrary it disavows in its briefs in this Court, many times over, that it claims an estoppel. What petitioner does contend is that the Commissioner's declination to act on the letter application made in 1954 on the ground of a lack of power to act, amounted, in law, to approval. In support of that contention petitioner cites State v. Jarmon, Texas Civ. App., 25 S.W. 2d 936, writ dismissed; Box v. Newsom, Texas Civ. App., 43 S.W. 2d 981, and City of Dallas v. Rosenthal, Texas Civ. App., 239 S.W. 2d 636, writ refused, n.r.e. None of the cited cases support the contention advanced.

In State v. Jarmon the Railroad Commission failed to act within a reasonable time on an application for a permit to drill an oil well, whereupon Jarmon proceded to drill without the permit. The State then sought an injunction to restrain the drilling of the well. The Court held that the State, like any other litigant, could not obtain relief from a court of equity when its own conduct had been arbitrary, unreasonable and inequitable. In the case before us the Commissioner is not seeking equitable relief.

Box v. Newsom can be of no comfort to petitioner. In that case Newsom and other truck operators sought and obtained an ex parte temporary injunction restraining Sheriff Box from arresting them for operating their trucks on the highways of the state without permits. The Court of Civil Appeals dissolved the injunction, holding that the mere fact that the plaintiffs had filed applications for permits did not authorize them to operate without permits, and that if the Railroad Commission was actually and designedly refusing to grant hearings to the plaintiffs on their applications their remedy was by writ of mandamus to compel the Commission to perform its duty and set the applications for hearing.

City of Dallas v. Rosenthal was a suit by the City of Dallas

to enjoin 'Rosenthal from using his property in violation of certain zoning restrictions. The trial court denied the relief sought. The Court of Civil Appeals affirmed. Many issues were involved in the appeal. It is enough to distinguish the case from the instant case that affirmance was rested, in part at least, upon a holding that because of the conduct of its officers the city, as in the Jarmon case, was in no position to seek equitable relief, and, moreover, was estopped to seek it. In the instant case the Commissioner seeks no equitable relief and petitioner disavows any claim of estoppel.

4 The ultimate power of the Commissioner under Article 881a is not to approve or disapprove the installation or equipment of a physical plant to be used in the operation of a branch office, but to approve or disapprove the opening and operation of a branch office in carrying on the business of a building and loan association. Any requirements which may be made with respect to physical plant are purely incidental. Normally, a building and loan association will apply for and be granted a permit to open and operate a branch office before a physical plant for that purpose is established and equipped, but a premature expenditure of time and money in the preparation of an office will not require approval of an application to open and operate the office, regardless of whether the expenditure is made prior or subsequent to the application.

5 Petitioner has made application for permission to open six branch offices. The application has never been heard or acted upon, admittedly because at the time it was made the Commissioner was of the opinion that he had no power to act. But however that may be, when the Commissioner was properly advised that he did have the power and that it was his duty to act, five of the offices were not open and operating and it was petitioner's duty, if it wished to avoid the possibility of a further futile expenditure of time and money, to then reurge its application and secure approval thereof. The failure of the Commissioner to act and the expenditure of time and money and the making of substantial commitments in the preparation of places of business in which to operate the branch offices did not operate, in law, as an approval of the opening and operation of the five branch offices. Petitioner may yet reurge its application to open and operate those five branch offices. Inasmuch as the rules and regulations of January 29, 1958 governing the making and approval of such applications were in effect before those offices were opened—if they have been opened—there is no reason why they should not apply to and govern the application and the approval

or disapproval thereof. Petitioner acquired no vested property rights by making expenditures and commitments before approval of the application, and the rules and regulations of January 29, 1958 are not out of harmony with the requirements of Article 881a-2. The reasonableness of the rules is not in question.

6   On the other hand, there has been an implied approval of the opening and operation of the branch office in Palm Center Shopping Center. Like branch offices of other building and loan associations which, as shown by the record, have been open and operating for many years without express approval of the Commissioner, that office was opened and began operation with his knowledge and without interference or hindrance by him. Since the statute required his approval it was his duty, regardless of his understanding or misunderstanding of it, to see that the office was not opened and put in operation without his approval. When he stood by and permitted the office to be opened and put in operation, it had his tacit approval and the law will imply approval. Approval does not rest upon an estoppel but upon a legal implication. The only case found which is fairly anagalous is City of Erie v. Baldwin, 136 Pa. Super. 496, 7 A. 2d 484, 488. In that case Baldwin, who was operating a public market, sought to defeat a license tax levied on that type of business by contending that he was not liable for the tax because he had not secured a license or permit, required by ordinance, to operate a public market. The court held that since the business was in operation as a public market the law would imply that a permit to operate it as such had been granted. The Court said:

"It is also true that in Pennsylvania the proper municipality may grant or refuse the privilege of conducting a public market, but permission to engage in the business which appellant certified he was conducting may be implied from the failure of the municipal officers charged with the duty of exercising its police powers to take any action looking toward its suppression."

We are not to be understood as holding that a public official may legalize an unlicensed business required by law to be licensed by winking at its unlicensed operation.

In so far as the judgment of the Court of Civil Appeals affirms the judgment of the trial court denying the declaratory judgment sought, it is affirmed. In so far as the judgment of the Court of Civil Appeals reverses the judgment of the trial

court, it is reversed, and the judgment of the trial court in granting an injunction is modified so that the writ of injunction shall operate to restrain and enjoin the respondent from interfering with the operation of petitioner's branch office at 5306 Palm Center in Palm Center Shopping Center.

Opinion delivered January 13, 1960.

Mr. Justice Smith, joined by Mr. Justice Hamilton, dissenting.

I respectfully dissent from the majority holding that the State Banking Commissioner has the power under Article 881a-(1) through 881a-(69), Vernon's Annotated Statutes of Texas, to approve or disapprove the opening of branch offices by a state chartered building and loan association. The branch offices involved in this suit were designated by Southwestern in a written notice and delivered to the Commissioner on January 7, 1954, and the Commissioner declined to approve the six branch offices at specified locations within Harris County, Texas, the domicile of Southwestern. For several years prior to January 7, 1954, the State Banking Commissioner was of the opinion and had taken the position that he did not have authority to approve or disapprove the opening of branch offices, and such was the reasoning behind the Commissioner's declination. The Commissioner declined to grant his approval, because, as he said, "approval of this office was not necessary." I do not agree with the Commissioner that Southwestern was under a duty to secure his approval for the opening of such public branch offices. There is no statutory enactment authorizing the rules and regulations promulgated by the State Banking Commissioner and Loan Section of the State Finance Commission on January 29, 1958, which have for their purpose the requirement of such approval before a duly state chartered building and loan association may open branch offices. The majority holds that statutory power to approve or disapprove branch offices is to be read into the statute, and, therefore, the State Banking Commissioner by implication has such authority. With this I do not agree. Where an administrative official is seeking power, that power is not to be implied, but rather must appear in clear language in the statutes. See Scanlan v. Home Ins. Co., Texas Civ. App., 79 S.W. 2d 186, er. ref.; Commercial Standard Ins. Co. v. Board of Insurance Commissioners, Texas Civ. App., 34 S.W. 2d 343, er. ref.; Board of Insurance Commissioners v. Texas Employers' Insurance Association, 144 Texas 543, 192 S.W. 2d 149; Law-

yers Title Insurance Corporation v. Board of Insurance Commissioners, Texas Civ. App., 207 S.W. 2d 972, wr. ref. n.r.e.; Board of Insurance Commissioners v. Guardian Life Ins. Co. of Texas, 142 Texas 630, 180 S.W. 2d 906; Opinions of Attorney General: 1940 No. 2049, dated March 27, 1940; No. 0-5926, dated March 17, 1944.

There is nothing in Article 881a(1), supra, that even intimates that the Legislature intended to grant the State Banking Commissioner the power and authority to approve or disapprove the opening of branch offices by duly chartered building and loan associations. The State Banking Commissioner does not affirmatively claim statutory authority to require his approval prior to the opening of branch offices, but, on the contrary, he alleged as a defense that his authority was created and established by the promulgation of certain rules and regulations on January 29, 1958. If the Legislature had so desired, it could have easily provided for such approval, but it did not. The majority opinion is, through its opinion, enacting legislation which the Legislature, the only law-making body, has refused to enact. The Legislature has not seen fit to enact legislation requiring approval or disapproval of the opening of branch offices of building and loan associations. Our statutes prohibit the opening of branch banks, but no such prohibition exists by statute with reference to building and loan associations. The State Banking Commissioner exercised his statutory authority when he granted the charter to Southwestern to conduct its business in Harris County, Texas, and to maintain its principal office in Houston, Texas. The objective of the Legislature in passing the building and loan statute was to enable associations to obtain a charter to conduct business in the neighborhood (in this case Harris County). We do not have a question as to whether or not petitioner has a right to do business in Harris County. The position of the Commissioner, and approved by the Court of Civil Appeals, and the majority obviously seeks to limit the area in which an association has the right under its charter to operate. At the time Southwestern made application for its original charter or articles of incorporation, it submitted facts, data, and statistics relating to all Harris County and the Greater Houston area. Therefore, if the Commissioner performed his duties, and I necessarily assume that he did, the investigation made before granting the charter was of a "neighborhood" that included such area. The granting and issuance of Southwestern's charter, assuming that the Commissioner properly performed his duties in connection with granting charters to building and loan associations, was in any event the result of a determination

that Harris County could adequately support a building and loan association in addition to those already chartered and located in Harris County. It is argued that the Commissioner necessarily by implication has the power he here seeks and that to deny him such power would enable a loan association to locate branch offices in a particular locality in competition with an association chartered to maintain its principal place of business in the same particular locality. I cannot agree that the location of branch offices in the manner sought by Southwestern will bring about chaos in the building and loan industry, and will result in unwholesome competition. Charters have been granted and branch offices established for some twenty years. The branch offices were granted without the approval of the Banking Commissioner. The limited character and operation of these branch offices is described in the pleading filed in this case by Southwestern. A branch office may not become a principal office. If the Commissioner properly performed his duties no other building and loan association operating in Harris County will suffer financial injury. I assume that he will not grant original charters to more building and loan associations to be located in Harris County than necessity and good business warrants. I contend that when the charters have once been granted, it was the intention of the Legislature to leave the matter of establishing branch offices to the good business judgment of the officers and directors of the building and loan association. The Commissioner has already approved the financial structure of the association, and by granting the original charter has placed his stamp of approval upon the character, ability, and integrity of its then officers and directors. Since the granting of the charter no disapproval of Southwestern or its personnel has been registered by the Commissioner. If in the opinion of the officers and directors of Southwestern, the opening of branch offices will afford a service to its customers and members and will be an overall improvement in its operational techniques, then why should the Commissioner have the power to limit the authority originally granted? For some years Southwestern has been doing business in the six areas where the branch offices are located. It has share customers in each of these areas. It has men working in each of these areas, daily, weekly, and monthly. It advertises in each of these areas. The opening of branch offices does not need the supervision of the Commissioner. The branch offices are of special convenience to the customers. Branch offices are necessary to adequately carry out the purposes for which the association was chartered. The purpose of a branch office is to serve the customers and improve the economic and operational practices and policies of an association in its business. The offi-

cers and directors determine the question of whether or not a branch office is making money. If it does not make money, that fact will be ascertained first by the association's officers and directors. The exercise of sound business judgment would lead to the closing of the branch office.

The trial court found that the Commissioner has no power under Article 881a, supra, to require his prior approval for the opening of branch offices. I would affirm the judgment of the trial court, and reverse that of the Court of Civil Appeals.

Opinion delivered January 13, 1960.

Rehearing overruled March 2, 1960.