

# The Attorney General of Texas

December 31, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

.J01 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth. Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employe'

Honorable Mark White
Governor of Texas
P. O. Box 12428, Capitol Station
Austin, Texas   78711

Opinion No.  JM-294

Re: State authority to destroy
privately owned starving or
diseased animals

Dear Governor White:

Your request letter describes a series of events which occurred over the course of several months last winter and which caused the starvation of numerous horses. You indicate that

> [a]lthough the situation seems to have now abated somewhat, your opinion is needed in order to be ready to take prompt action if the present situation becomes aggravated and to determine what, if any, new legislation may be needed to alleviate suffering of animals which might be trapped in similar circumstances in the future.

Fortunately, the situation did not become aggravated and, because of generous help from many concerned individuals and associations, the situation was actually alleviated shortly after we received your letter. Nevertheless, your letter expressed concern for much more than just informal advice about immediate, emergency action. Your request called for extensive research on the authority of the Texas Animal Health Commission and "any other agency or official" to order the destruction of privately-owned animals dying of starvation. You seek such information, in part, "to determine what, if any, new legislation may be needed. . . ." Although this office cannot suggest new legislation and no proposed legislation has been submitted to us for legal consideration, we can set forth the parameters of the law as it presently exists.

The only state agency with clear authority to identify and order the destruction of certain animals is the Texas Animal Health Commission. There was never any question about whether the Commission may order the destruction of "diseased" animals; there is clear authority for such action. See Tex. Agric. Code §161.041; Gluck v. Texas Animal Health Commission, 501 S.W.2d 412 (Tex. Civ. App. - San Antonio 1973, writ ref'd n.r.e.); Nunley v. Texas Animal Health

Commission, 471 S.W.2d 144 (Tex. Civ. App. - San Antonio 1971, writ ref'd n.r.e.).

The pivotal question raised by your letter is whether the term "disease" encompasses starvation. You refer to the commission's authority to order the destruction of "starving or diseased animals," the word "or" suggesting alternative findings. Information supplied in connection with your request indicates that the starvation of horses takes weeks and that there exists a "point of no return," after which veterinarians agree that the animal cannot be saved. After this point, however, the animal may suffer for several days more before dying. Consequently, the primary concern expressed is for the prevention of potential suffering during this period.

As indicated, there was never a question in this case about the Texas Animal Health Commission's authority to order the destruction of "diseased" animals. See Tex. Agric. Code §161.041; Nunley v. Texas Animal Health Commission, supra. With regard to the scope of the commission's authority to act with regard to "disease," the commission is governed by the fundamental rule that, in addition to express powers, administrative agencies have only the powers necessary to carry out reasonably the legislative purpose of the law that guides the agency. Southwestern Savings and Loan Association of Houston v. Falkner, 331 S.W.2d 917 (Tex. 1960); Housing Authority of City of Dallas v. Higginbotham, 143 S.W.2d 79 (Tex. 1940). Accordingly, statutory terms such as "disease" must be read in the context of legislatively intended purposes.

Section 161.041(a) of the Texas Agriculture Code authorizes the Texas Animal Health Commission to protect livestock from certain specified diseases, and subsection (11) authorizes protection from "other diseases recognized as communicable by the veterinary profession." No one suggests that starvation is itself a communicable disease. Additionally, the commission, in its discretion, "may act to eradicate or control any disease that affects livestock . . . regardless of whether the disease is communicable." (Emphasis added). Agric. Code §161.041(b). Starvation and extremely adverse conditions could clearly cause a threat of communicable or non-communicable disease upon which the commission, in its discretion, could act pursuant to the Agriculture Code's grant of authority to "act to eradicate or control any disease that affects livestock . . . regardless of whether the disease is communicable." (Emphasis added). Id. Nevertheless, the nature and extremity of circumstances sufficient to warrant an exercise of the police power depend on fact determinations which we cannot address in the opinion process.

Apparently, the veterinary profession is, at present, unsettled as to whether starvation itself actually constitutes a "disease." Section 161.041(a)(11) expressly ties the determination of what

constitutes a communicable disease to the standard practice of the veterinary profession. Section 161.041(b) refers to any "disease," communicable or not, which affects livestock; it does not expressly tie the meaning of "disease" to the standard practice of the veterinary profession. Nevertheless, reference to such expert advice is implicit in the whole scheme of animal disease control set forth in the Agriculture Code. The determination of whether starvation could be a "disease" depends upon adjudicative facts and agency expertise which are outside the authority of this office to decide. Moreover, we must construe the commission's authority over "disease" within the context of the meaning of the term intended by the legislature in the Agriculture Code and within constitutional limits on the exercise of the powers conferred.

The commission's power to control "disease" by ordering the destruction of privately-owned, diseased animals involves an exercise of the police power for the public welfare. Because the law in Texas regards animals as private property, animal owners have all traditional property rights in their animals; accordingly, both the taking of property and the procedure involved in the taking are relevant. See Nunley v. Texas Animal Health Commission, supra; see also Dibrell v. City of Coleman, 172 S.W. 550 (Tex. Civ. App. - Austin 1914, writ ref'd).

Exercise of the police power of the state in designating and consigning to death diseased animals is not a "taking or damaging" of property proscribed by article I, section 17 of the Texas Constitution, nor a "taking" under the Fifth and Fourteenth Amendments to the United States Constitution because a compelling public interest exists. See Nunley v. Texas Animal Health Commission, supra; Attorney General Opinions H-148 (1973); WW-835 (1960). Since the Nunley case was decided, however, the Texas Supreme Court held, in another context, that property may not be taken without compensation under certain circumstances, even in the exercise of the police power. See City of Austin v. Teague, 570 S.W.2d 389 (Tex. 1978); see also DuPuy v. City of Waco, 396 S.W.2d 103 (Tex. 1965); San Antonio River Authority v. Lewis, 363 S.W.2d 444 (Tex. 1962). The constitutional test is whether the public need outweighs the private loss. City of Austin v. Teague, supra at 393.

With regard to the procedure required, the court in Nunley v. Texas Animal Health Commission stated that

> In the area of health, where administrative orders have as their purpose the elimination of disease or the prevention of its spread, the courts have demonstrated a willingness to dispense with the requirement of a hearing, particularly

> where the administrative decision is based on test
> or inspection.

471 S.W.2d at 148. The exercise of such power without a hearing was upheld because of the compelling public interest present and because the administrative decision was based on a test or inspection. Id.

If the legislature had intended the term "disease" within the Agriculture Code to include starvation, it would necessarily have included provisions for different administrative procedures. The considerations applicable to an administrative determination of starvation as a "disease" may differ from the tests applicable to traditional diseases. The procedural problem is compounded by the danger that private property will be taken "solely" to alleviate suffering. The Agriculture Code provides the Texas Animal Health Commission with no authority to order destruction of starving animals solely on the basis of alleviating suffering. In the other instances in which the legislature has authorized such action, a much more extensive administrative procedure has been provided, presumably to protect the due process and property interests of the animal owners involved. See V.T.C.S. art. 182a, §§2(b), 4.

Consequently, given the unsettled status of starvation as a "disease" within the context of the Agriculture Code and given the importance traditionally accorded by the legislature to the constitutional rights which are affected by the commission's actions, we conclude that the legislature did not intend the term "disease" to encompass starvation alone as a disease as a matter of law. As indicated previously, however, depending upon the adjudicative facts involved, starvation could clearly cause a disease threat upon which the commission could act pursuant to the Agriculture Code's grant of authority to "act to eradicate or control any disease that affects livestock . . . regardless of whether the disease is communicable." §161.041(b).

Although the Agriculture Code fails to provide the Texas Animal Health Commission with the authority to order the destruction of privately-owned starving animals for the purpose of alleviating the animals' suffering, a statute which is applicable to certain local public officials does provide some authority to do so. See V.T.C.S. art. 182a.

Article 182a, V.T.C.S., authorizes certain actions to prevent cruelty to animals. The act provides, in pertinent part:

> Section 1. In this Act 'cruelly treated' means tortured, seriously overworked, unreasonably abandoned, unreasonably deprived of necessary food, care, or shelter, cruelly confined, caused

to fight with another animal, or otherwise cruelly treated.

Sec. 2.  (a)  If a county sheriff, constable, or deputy constable or an officer who has responsibility for animal control in an incorporated city or town has reason to believe that an animal has been or is being cruelly treated, he may apply to a justice court in the county where the animal is located for a warrant to seize the animal.  On a showing of probable cause to believe that the animal has been or is being cruelly treated, the court shall issue the warrant and set a time within 10 days for a hearing in the court to determine whether the animal has been cruelly treated.  The officer executing the warrant shall cause the animal to be impounded and shall give written notice to the owner of the animal of the time and place of the justice court hearing.

(b)  If the owner of the animal is found guilty in county court of a violation of Section 42.11, Penal Code, involving the animal, this finding is prima facie evidence at the hearing that the animal has been cruelly treated.  Statements of an owner made at a hearing provided for in this Act are not admissible in a trial of the owner for a violation of Section 42.11, Penal Code.  After all interested parties have been given an opportunity to present evidence at the hearing, if the court finds that the owner of an animal has cruelly treated the animal, the court shall order a public sale of the animal by auction.  If the court does not find that the owner of the animal has cruelly treated the animal, the court shall order the animal returned to the owner.

. . . .

[Sec. 3] (c)  If the officer is unable to sell the animal at auction, he may cause the animal to be destroyed or may give the animal to a nonprofit animal shelter, pound, or society for the protection of animals.

(Emphasis added).

Article 182a thus provides some <u>local</u> authority to work through the justice court to order the destruction of privately-owned animals dying of starvation. The act, however, provides a necessary but very time-consuming procedure to protect the interests of animal owners. <u>See also</u> art. 182a, §4 (appeal by animal owner authorized). Accordingly, the act provides little help for situations which require more immediate action, such as the one presented here.

No other state or local agency or official presently holds the authority to order the destruction of privately-owned animals that are dying of starvation. In article 182a, the legislature evidenced a willingness to view animals as something more than personal property subject to the uncontrolled use or abuse of their owners. Until the legislature views animals as something other than inanimate personal property, however, the constitutional protections to which their owners are entitled may prevent immediate emergency action to alleviate suffering.

## S U M M A R Y

The Texas Animal Health Commission has only the authority to exercise powers reasonably necessary to control and prevent "disease." Although starvation and extremely adverse conditions could clearly cause a threat of "disease," starvation is not, as a matter of law, a disease within the meaning of the Texas Agriculture Code, section 161.021 <u>et seq.</u>

Article 182a, V.T.C.S., authorizes specified local government officials to work through the justice court to deal with privately-owned animals dying of starvation. No other state or local agency or official presently holds the authority to order the destruction of privately-owned animals that are dying of starvation.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Susan Garrison
Tony Guillory
Susan Henricks
Jim Moellinger
Jennifer Riggs